DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas which granted appellees, Mary and Ernest Bollinger, summary judgment against appellant, Arthur Reynolds, on June 12, 2000. For the reasons that follow we reverse in part and affirm in part the decision of the trial court.
In this action, appellant filed a complaint against appellees on August 5, 1998.[1] Appellant alleged that appellees had negligently represented him in an action against the Lucas County Board of County Commissioners, the city of Oregon, and others, concerning a waterline on appellant's property ("the underlying action"). The defendants in the underlying action had filed for summary judgment and appellees never filed a response on behalf of appellant. In this action, appellant's complaint alleged that judgment was granted in favor of all the defendants in the underlying action on June 15, 1995. After hearing nothing from appellees, appellant alleged that he contacted his current counsel, John Rust, on or about September 25, 1995. According to appellant, a Civ.R. 60(B) motion was filed on December 7, 1995 in the underlying action. On May 23, 1996, appellant's Civ.R. 60(B) motion was granted and the June 15, 1995 judgment was vacated.
In his complaint against appellees in this case, appellant claimed that he suffered damages as a result of appellees' negligence as follows: (1) because of his water situation and the delay in resolving the underlying action, appellant was forced to purchase ice for his bar, as opposed to making it himself, which cost him $125 per month; (2) because of the encroachment of the waterline, appellant was unable to place a gas tank for his filling station near the waterline; (3) appellant had to place his septic tanks an additional thirty feet north of where he would have placed them because of the location of the waterline, which cost him an additional $20,000; and (4) appellant incurred over $2,000 in attorney fees as a result of having to hire Attorney Rust to prepare and pursue a Civ.R. 60(B) motion to get the judgment against appellant vacated in the underlying action. Appellant further claimed that appellees' delay in pursuing appellant's claims in the underlying action caused him damages for various reasons:
 "* * * including that witnesses involved had their memories to grow dimmer by the reason of the passing of time; the anxiety, the natural worry that attended [appellant] whenever the Judge ruled against him and dismissed his case, and rendered Judgment against him in favor of the City of Oregon and the other Defendants, caused him to lose, particularly with the passing of time, some of his will to fight for his rights and justice, and caused him directly to settle for the ultimate settlement of some $16,000.00, plus the installation of a water line from the City of Oregon water line, to his place of business; and has caused him additional losses, he would not have settled for what he did settle for, if he had not been so delayed by the Defendants and this caused him a loss, in and of itself, of upwards of $15,000.00."
Ultimately, appellant prayed in his complaint for a judgment against appellees in the amount of $25,000.
In this case, on July 15, 1999, appellees filed a motion for summary judgment against appellant. The motion was struck on September 22, 1999, for failure to supply a supporting affidavit. Appellees refiled their motion with an affidavit on December 6, 1999. Appellees stated in their motion that it could be inferred that there existed an attorney-client relationship between them and appellant, and that they breached their duty to appellant by failing to file a response to the motions for summary judgment filed in the underlying action, which caused "the underlying action to be dismissed by the Court, to [appellant's] detriment." However, appellees contended that it was not clear "what, if any, damages [appellant] experienced, due to [appellees'] failure to reply to the Motions for Summary Judgment in a timely fashion."
With respect to the damages issue, appellees stated that appellant's counsel provided an itemized billing statement in the amount of $2,745. However, appellees pointed out that they performed work for appellant, for which he was never billed, totaling approximately $1,000.[2] As such, appellees argued that they were entitled to the defense of recoupment because "justice would not be served if damages were assessed against [appellees], without a setoff for the service which were rendered, at no cost to [appellant]."
With respect to other damages, appellees argued that appellant had a duty to establish that he suffered damages resulting as a proximate cause of appellees' actions. Specifically, appellees asserted that appellant's list of damages was speculative. Appellees listed appellant's damages as follows:
"Attorney fees for 60(B) motion $ 2,745.00
Expert witness fee — Mr. Leite $ 410.75
Cost of ice from June, 1995 $ 3,200.00
2 years interest on $16,000.00 $ 3,200.00
Fees to Rust for underlying action $ 6,000.00
Emotional distress $ 744.25
Total damages $ 16,300.00"
Appellees asserted that Mr. Leite must have been an expert in the underlying action. However, appellees contend that appellant was responsible for the costs of litigation in the underlying action and failed to demonstrate that the costs for Mr. Leite were incurred solely as a result of appellees' failure to file a response to summary judgment in the underlying action.
Appellees also asserted that appellant was unable to establish that he suffered any damages from having to buy his ice. Appellees pointed out that appellant never established that the cost of buying ice exceeded the cost of buying an ice making machine, paying for the electricity to operate it, and paying for the cost of water and sewage to make the ice.
Appellees additionally asserted that appellant's estimation that he could have received $3,200 in interest on his $16,000 in the underlying action was purely speculative.
Appellees argued that the rate of interest, ten percent, was unrealistic, and that appellant did not establish that he would have actually invested the funds since June 1995, rather than spending the settlement funds.
Appellees further asserted that appellant never produced, despite repeated requests, an expert to establish that he suffered from negligent and intentional infliction of emotional distress, what the cost of such treatment was, or what the damages would have been.
Appellees also argued that settlement of the underlying action operates as a waiver of the malpractice claims against the client's former attorney. Citing, DePugh v. Sladoji (1996), 111 Ohio App.3d 675. Appellees asserted that the point was not that they made reasonable decisions and a diligent effort on appellant's behalf, but that Attorney Rust used his best efforts to obtain appellant's settlement of the underlying action. As such, appellees argued that appellant should not be permitted to seek additional recovery from appellees for his claims made in the underlying action, which had been settled.
Appellant was granted leave until April 28, 2000 to file a response to appellees' motion for summary judgment. Appellant, however, failed to file a response. As such, on June 1, 2000, appellees filed a motion to dismiss the action on the basis that appellant failed to respond to the motion for summary judgment.
On June 8, 2000, appellant filed, "PLAINTIFF'S MOTION FOR ORAL HEARING ON DEFENDANTS' SUMMARY JUDGMENT MOTION, AND FOR EXTENSION TO NEXT MONDAY TO FILE RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT." In appellant's motion, he argued that appellees were not entitled to a setoff; that appellees' written demand for $38,000, while they were handling the underlying action, established that appellant "could have had a settlement for some $10,000., [sic] more than what he got" with Attorney Rust representing him; and that appellant only settled for $16,000 "because he was tired of this suit, and wished thereby to free his mind of this suit, and all the misery brought by it and [appellees'] want of care." Also on June 8, 2000, Attorney Rust filed an affidavit opposing appellees' motion for summary judgment. In pertinent part to the issue of damages, Attorney Rust attested that appellees should have known that appellant would suffer anxiety over the loss of the underlying action; that people can suffer anxiety, worry, and mental anguish without "having to go or needing to go or even seeing a Psychiatrist or a Doctor"; and that "in view of what Mr. Reynolds had been through before this Counsel was hired, and all of the other aspects, then Mr. Reynolds would have continued, and in this Counsel's opinion, within reasonable legal probability and certainity [sic] more than $5,000., [sic] more could have been and would have been obtained, particularly, if Mr. Reynolds had gone to Trial." Appellant also attached his own affidavit wherein he attested to matters concerning the progression of the underlying action, the damages he suffered concerning the encroachment of the waterline onto his property, and the fact that he acquired new counsel when appellees failed to respond to his attempts to contact them.
Also on June 8, 2000, appellant filed "PLAINTIFF'S MOTION UNDER RULE 60B OR 54 FOR VACATION PRIOR ORDERS SUMMARY JUDGMENT; AND FOR OTHER RELIEF." Insofar as no judgment had been rendered as of June 8, 2000, the intention of appellant's motion is unclear. Nevertheless, appellant's counsel stated that he would have responded sooner to appellees' motion for summary judgment; however, he "simply forgot." This motion was denied on June 20, 2000.
On June 12, 2000, journalized June 13, 2000, the trial court ruled on appellees' motion for summary judgment, their motion to dismiss, and appellant's motion for extension of time to respond to appellees' motion for summary judgment. The trial court held that appellant's response to the motion for summary judgment, in the form of affidavits, was untimely and found appellant's motion for extension of time not well-taken. Furthermore, the trial court granted appellees' motion for summary judgment, denied appellees' motion to dismiss on the basis that it was moot, and dismissed appellant's complaint.
After the trial court's decision, also on June 12, 2000, appellant filed, "AFFIDAVIT OF PLAINTIFF REYNOLDS SUPPORTING PLAINTIFF'S MOTION, AND OPPOSING DEFENDANT'S SUMMARY JUDGMENT MOTION." In appellant's June 12, 2000 affidavit, he stated that appellees had made a demand on the underlying action, in his behalf, in the amount of $37,003.50; that he was "very disappointed" when he found out that summary judgment had been granted against him in the underlying action; that he was charged $2,745 by Attorney Rust for preparation of the Civ.R. 60(B) motion in the underlying action; that he would only have paid a maximum of $.17 per bag of ice, as opposed to $.68 per bag, during the two year delay caused by appellees' failure to respond to summary judgment in the underlying action; that he lost approximately $2,000 in profits due to his inability to make and sell bags of ice at his business during the two year delay in his case; and that his fees to be paid to appellees for the underlying action were not to exceed $2,000.
On June 13, 2000, appellant filed, "PLAINTIFF'S MOTION TO SET ALL MOTIONS FOR ORAL HEARING: AND MEMORANDUM IN SUPPORT." Appellant argued that he was entitled to an oral hearing, pursuant to Civ.R. 54(B) and Civ.R. 60(B); that he had a meritorious defense to appellees' motion for summary judgment; and that his failure to respond to appellees' motion was "excusable neglect." This motion was denied by the trial court on June 27, 2000, for the following reason: "As the Court's Judgment Entry granting summary judgment was filed on June 12, 2000, the Court finds plaintiff's motion not well-taken."
Appellant timely appealed the trial court's June 13, 2000, judgment and raises the following assignments of error:
 "ASSIGNMENTS OF ERROR. "ARGUMENT-ASSIGNMENT OF ERROR NO. 1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RENDERING SUMMARY JUDGMENT ON JUNE 13, 2000, BECAUSE THE RECORD AND FILINGS SHOWED:
 "A. APPELLEES BOLLINGERS' OWN MOTION FOR SUMMARY JUDGMENT SHOWED EACH WAS NEGLIGENT, AND THAT SUCH NEGLIGENCE CAUSED PLAINTIFF RECOVERABLE DAMAGES, FOR DELAY OF OVER ONE YEAR, IN GETTING OREGON CITY WATER:
 "B. PLAINTIFF'S LOSS FOR THE PERIOD OF DEFENDANTS' CAUSED DELAY, FROM NOT HAVING OREGON CITY WATER IN OPERATING HIS BAR: AND HAVING TO SPEND MONEY TO BUY ICE — A COMMON SENSE LOSS —
 "C. AN ATTORNEY FEE FOR ALL THE WORK DONE BY HIS COUNSEL IN SECURING THE RULE 60(B) VACATION OF THE SUMMARY JUDGMENT, AND THE ATTORNEY'S STATEMENT FOR $2,745.00, HAS NOT BEEN CHALLENGED;
 "D. THE DELAY CAUSED BY DEFENDANT ATTORNEYS CAUSED MR. REYNOLDS TO SETTLE SOONER THAN HE OTHERWISE WOULD HAVE SETTLED — A SUBSTANTIAL LOSS BECAUSE OTHERWISE HE WOULD HAVE KEPT THE ONLY `DEEP POCKET DEFENDANT' IN THE CASE, AT LEAST UP TO TRIAL: OF $5,000.00 OR MORE:
 "E. THE NATURAL LOSS OF WORRY, UPSET, ANXIETY, WHEN A JUDGMENT IS RENDERED BY THE COURT AGAINST A PARTY, AND NEITHER THE PARTY NOR HIS COUNSEL KNOWS WHEN AND WHETHER THE JUDGE WILL VACATE THAT JUDGMENT UNDER RULE 60(B).
 "ARGUMENT-ASSIGNMENT OF ERROR NO. 2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING PLAINTIFFS RULE 56 F MOTION FOR AN EXTENSION TO MONDAY, JUNE 12, 2000, WITHIN WHICH TO FILE PLAINTIFF'S AFFIDAVIT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: AND THE SAME WAS SUPPORTED BY AFFIDAVIT, AND WOULD NOT HAVE DELAYED THE SEPTEMBER TRIAL DATE, NOR ANY OTHER COURT MATTER.
 "ARGUMENT — ASSIGNMENT OF ERROR NO. 3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT GRANTING PLAINTIFF'S MOTIONS UNDER RULE 54(B) and RULE 60 B, AS PLAINTIFF'S SWORN EVIDENCES SUPPLIED PROPER AND SUFFICIENT GROUNDS FOR VACATING ANY PRIOR UNJOURNALIZED ORDERS UNDER RULE 54(B) AND ALSO FOR VACATING ANY JOURNALIZED JUDGMENTS UNDER RULE 60(B)."
This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. LorainNatl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
A party moving for summary judgment "must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,293. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." Id. If, however, the moving party meets its initial burden, the nonmoving party must then set forth specific facts, as outlined in Civ.R. 56(E), that show there is a genuine issue for trial. Id. If the nonmovant fails to respond, then summary judgment shall be entered against the nonmovant, if appropriate. Id.
In this case, appellees sought summary judgment on the basis that appellant could not establish that he was damaged as a result of their failure to respond to the motion for summary judgment filed in the underlying action. We find that appellees met their initial burden to affirmatively demonstrate that appellant had no evidence to support his claim for damages with respect to the following items: (1) Mr. Leite's expert witness fee; (2) the cost of ice; (3) the interest on the settlement funds since the time the case had been dismissed; (4) Attorney Rust's fees generated while pursuing appellant's claims in the underlying action; (5) emotional distress; and (6) the difference in the amount of recovery appellant could have gotten had he not settled the case and gone to trial. Attorney Rust's fees in pursuing appellant's claims in the underlying action and the expert witness fee were both costs appellant would have incurred regardless of whether appellees or Attorney Rust represented appellant in the underlying action. Additionally, alleged damages arising as a result of lost revenue from not producing ice, interest on the settlement funds, emotional distress allegedly suffered by appellant, and the difference in the recovery appellant could have gotten had he gone to trial are all speculative in nature. "It is axiomatic that compensatory damages must be shown with certainty, and damages which are merely speculative will not give rise to recovery."Endicott v. Johrendt (June 22, 2000), Franklin App. No. 99AP-935, unreported.
Since appellees met their initial burden, appellant was then required to set forth specific facts to establish that a genuine issue of material fact existed for trial. However, appellant failed to timely respond to appellees' motion in regard to these damages. As such, summary judgment was properly entered against appellant with respect to these alleged damages.
We find, however, that appellees failed to affirmatively demonstrate that appellant had no evidence to support his claim for damages with respect to the attorney fees he incurred in successfully pursuing a Civ.R. 60(B) motion in the underlying action. Appellees' failure to respond to the motion for summary judgment resulted in judgment being granted against appellant. Insofar as appellant was able to get the judgment vacated, it is clear that, had appellees adequately represented appellant, the judgment in the underlying action never would have been entered against him in the first place. Accordingly, we find that the attorney fees incurred as a result of the filing of the Civ.R. 60(B) motion in the underlying action were directly and proximately the result of appellees' breach of duty in failing to respond to the motion for summary judgment. We therefore find that appellees were not entitled to summary judgment with respect to Attorney Rust's fees generated in the pursuit of the Civ.R. 60(B) motion the underlying action.
We further note that appellees did not dispute the amount or the reasonableness of Attorney Rust's fees which were generated in pursuit of the Civ.R. 60(B) motion; rather, appellees argued that they should be entitled to a setoff because of the work they had completed in the underlying action. As such, this argument failed to establish that appellant was not entitled to recover his attorney fees.
Accordingly, we find appellant's first assignment of error well-taken only as to the issue of damages relating to the attorney fees generated in pursuit of the Civ.R. 60(B) motion in the underlying action. With respect to all other claims for recovery, we find that summary judgment was properly granted insofar as appellant failed to establish that a genuine issue of material fact existed for trial with respect to these damages.
In his second assignment of error, appellant argues that the trial court abused its discretion in not granting him a further continuance to respond to appellees' motion for summary judgment. The decision whether to grant a motion for extension of time lies within the broad discretion of the trial court and will be reversed on appeal only for an abuse of discretion. Miller v. Lint (1980), 62 Ohio St.2d 209. In this case, appellant was provided ample time and opportunity to respond to appellees' motion. Appellant was given until April 28, 2000 to respond to summary judgment; however, he did not seek a further continuance to respond until June 12, 2000. We find that the trial court was within its discretion to deny appellant's request. Accordingly, we find appellant's second assignment of error not well-taken.
In his third assignment of error, appellant argues that the trial court committed reversible error in not granting his Civ.R. 60(B) motion, filed June 13, 2000. Upon review of the record, we find that the trial court never addressed the merits of this motion; rather, the trial court held, that the motion was denied because summary judgment had already been granted. Accordingly, we remand this issue to the trial court for further consideration of appellant's June 13, 2000 motion.
On consideration whereof, the court finds that the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings in accordance with this decision. Parties are ordered to share equally in the court costs of this appeal.
 _____________________ KNEPPER, J.
 Melvin L. Resnick, J., Mark L. Pietrykowski, P.J. CONCUR.
[1] This was a refiling of a case that had been previously filed and dismissed pursuant to Civ.R. 41.
[2] Appellant did pay appellees $200, $175 of which was used as the filing fee on the underlying action. The remaining $25 was allegedly still on account.